**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT WILLIAM MAWSON, SR.,** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:13-1714** |
| | : | |
| **v** | : | |
| | : | **(MANNION, D.J.)** |
| **THE PITTSTON POLICE DEPT.,** | | **(SCHWAB, M.J.)** |
| ***et al.,*** | : | |
| | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

This case arises out of two separate incidents between Mr. Robert Mawson, Sr., the plaintiff, and two Pittston City police officers. The first occurred on June 15, 2013, when Pittston Police Officer Kyle Shumosic received complaints about Mr. Mawson threatening to beat-up his daughter. Officer Shumosic sought a warrant for his arrest and put out a "be on the lookout" radio call to other officers, claiming that Mr. Mawson was armed and dangerous. He was later charged based on those threats and found guilty of disorderly conduct after a summary trial.[1] After the June 15 incident, but prior

---

[1]The court takes judicial notice of the plaintiff's conviction as it is part of a public record and the plaintiff filed a transcript from the summary trial where he was found guilty in conjunction with this complaint. (Doc. 11). *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Groups Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999). The plaintiff was found guilty of disorderly conduct and ordered to pay a fine of $300.00. (Doc. 11); *Commonwealth of Pennsylvania v. Robert Mawson*, MJ-11104-NT-0000546-2013, Luzerne County Magistrial District Court (July 17, 2013)(Kravitz, M.D.J.). The docket

to his trial and conviction, Mr. Mawson had an encounter with Pittston Police Officer Sam DeSimone when he was leaving a bar. Mr. Mawson claims the officer quickly drove up to his car, blocked his vehicle, ordered him to empty his pockets, and demanded he provide identification so he could run a warrant check. After the warrant check came back negative, Mr. Mawson was allowed to leave. He claims this stop occurred because he had a pending civil suit against Pittston City.

Mr. Mawson alleges a variety of claims against the Pittston Police Department and several officers, including violations of his fourth amendment rights and reputational harm stemming from the broadcast that he was "armed and dangerous" pursuant to 42 U.S.C. §1983, along with a state-law defamation claim for that same broadcast and other statements of Officer Shumosic. Judge Schwab issued a report recommending only Mr. Mawson's fourth amendment claim against Officer DeSimone be allowed to proceed. The report further recommends that all of the other defendants and claims be dismissed. The court agrees that Mr. Mawson has failed to allege any personal involvement on behalf of the other defendants in the fourth

---

from the plaintiff's case is available for public access via the Unified Judicial System Pennsylvania Web Portal at http://ujsportal.pacourts.us/DocketSheets/MDJ.aspx.

2

amendment claim and also failed to state a harm to reputation claim. Those claims will be **DISMISSED WITH PREJUDICE**. The court further declines to exercise supplemental jurisdiction over his state law defamation claim. In sum, Judge Schwab's report and recommendation will be **ADOPTED IN FULL**.

## I.      FACTUAL BACKGROUND

The plaintiff alleges that his relationship with his ex-wife has been acrimonious. They have fought over custody of their daughter for over 14 years and his ex-wife has filed protection from abuse orders (PFAs) against him. (Doc. 1). The first encounter between the plaintiff and officers from the Pittston Police Department started sometime on June 15, 2013 when the plaintiff's ex-wife reached out to Officer Shumosic, a defendant in this suit. (Doc. 9, 12). She allegedly told him that she received a call at around 4:00 PM informing her that the plaintiff was driving around the area of Drummond Street and Parsonage Street, looking for their daughter. The caller also reported that the plaintiff claimed he was going to "beat the shit out of" their daughter. (Doc. 12). Further, two other friends reported they heard the plaintiff make threats against her in that same area. Their daughter was not in the

area of Drummond or Parsonage Streets while the plaintiff was making these threats. (Id.).Their daughter also had an active PFA against her father, the plaintiff at that time. (Doc. 11).

Officer Shumosic contacted one of the daughter's friends ("Friend 1") so he could hear her version of the events. According to her, the plaintiff stopped on Drummond Street and asked where his daughter was. The friend said she did not know and the plaintiff continued driving down the street and spoke to other neighbors. Officer Shumosic reached out to another friend ("Friend 2") who also came to the police station. She reported that the plaintiff was driving a white pick-up truck erratically down Parsonage Street approximately 14 or 15 times. He then stopped and spoke with Friend 2 and asked if she knew where his daughter was. She responded that she did not know who he was talking about and he replied, "If I see her up the manor[2] again, I'm going to beat the shit out of her." Before coming to the police station, Friend 2 learned that the man in the white pick-up was the plaintiff.[3]

Officer Shumosic then attempted to get in touch with the plaintiff by

---

[2]Although it is unclear from the complaint, it appears the plaintiff was referring to the area around "The Pittston Manor," a retirement home in Pittston.

[3]These facts come from the plaintiff's own exhibits, including an affidavit of probable cause filled out by Officer Shumosic. (Doc. 12).

4

going to his mother's house. The police did seek an arrest warrant, but it is unclear from the complaint whether one was issued. When they arrived at his mother's home, they claimed to have a warrant. (Doc. 10). The plaintiff's mother alleges the police informed her that the plaintiff went into a woman's house with a gun looking for his daughter.

The plaintiff claims that after collecting the reports from his ex-wife and other alleged witnesses, Pittston police officers and Pennsylvania State Police Troopers went on a desperate search for him. The plaintiff has attached an affidavit from a witness who states she heard the Pittston police broadcast a warning that he was armed and dangerous while this search was ongoing. (Doc. 10). This witness called the plaintiff and informed him of the broadcast. (Doc. 10). The plaintiff also avers that State Police Troopers and Officer Shumosic drove to the plaintiff's home in Wayne County looking for him. While there, he claims they spoke to several of his neighbors. He alleges that these officers asked the neighbor if he had ever observed the plaintiff shooting a gun and asked how he was as a neighbor. The plaintiff asserts that this neighbor called him and warned him that the police were acting strange. After speaking with this neighbor and hearing about the "armed and dangerous" broadcast, the plaintiff alleges that he was in fear of being shot

by the police. (Doc. 1).

At some point, the plaintiff's mother went to the police station and spoke with Officer Moyer, also a defendant in this case. In sum, the plaintiff's mother told police her son was not armed and that he should be given a chance to tell his side of the story. The plaintiff's mother alleges that the police ignored her request, even when she had an individual named "Eddie" on her cell phone, who was with the plaintiff at the time. According to his mother, Officer Moyer asked to speak with the plaintiff, but it is unclear whether they spoke. When she left the police station, the plaintiff's mother received a call from a friend warning her that the police had just broadcast that the plaintiff was "armed and dangerous" over the radio. She then called her son and told him about the police broadcast. He was shocked and said that the witnesses against him were lying. (Doc. 10).

It is unclear whether the plaintiff was ever arrested or how the "desperate search" for him concluded, but a criminal complaint was issued on June 17, 2013 charging the plaintiff with terroristic threats in violation of 18 Pa.C.S.A. §2706. A summary trial was held on July 17, 2013 before the

Honorable Alexandra Kokura Kravitz, Pennsylvania Magistrial District Judge.[4]

During the trial, Friend 1 testified and said she was with Friend 2 at the time they encountered the plaintiff driving around Drummond Street. She specifically said she heard the plaintiff threaten to "beat the shit out" of his daughter if she was at "the manor" again. (Doc. 11). During this trial, Friend 2 was unavailable, but Officer Shumosic said she would be available if the case was to go to trial on another date. The plaintiff claims that Officer Shumosic made-up this person. The plaintiff's ex-wife and Officer Shumosic also testified during this trial. At the conclusion, the judge dismissed the charge of terroristic threats, but found the plaintiff guilty of disorderly conduct. (Doc. 10); fn. 3, *supra*.

The second encounter between the plaintiff and Pittston police officers occurred approximately two weeks after the incident described above. On June 28, 2013, the plaintiff was at a bar on Main Street in Pittston. As he was leaving the bar, he saw a friend who allegedly asked him for $2.00. The plaintiff claims he reached into his pocket, took out $2.00, and gave it to his friend. After this exchange, he avers that he then continued walking toward

---

[4]*Commonwealth of Pennsylvania v. Robert Mawson*, MJ-11104-NT-0000546-2013, Luzerne County Magistrial District Court (July 17, 2013)(Kravitz, M.D.J.).

his car that was parked just in front of the bar. The plaintiff alleges that an unmarked car with its lights on then stopped directly behind his car, plain-cloths Officer DeSimone exited, approached the plaintiff, and ordered him to empty his pockets. The plaintiff refused and said that the officer was only bothering him because of his civil lawsuit against Pittston. The plaintiff further claims that his car was blocked by Officer DeSimone's unmarked police cruiser.  (Doc. 9).

After this initial refusal, the officer again ordered the plaintiff to empty his pockets. The plaintiff objected and did not comply with the officer's second order. Officer DeSimone then called for back-up. The plaintiff claims he was afraid what would happen when back-up arrived, so he removed his wallet from his pocket and showed the contents to Officer DeSimone. The plaintiff alleges the officer then ordered him to produce his identification so could "run a warrant check on [him]." While Officer DeSimone was completing the warrant check, back-up arrived and the police ordered various bystanders back into the bar. After finding the plaintiff had no active warrants, he was allowed to go back into the bar. He remained in the bar for fifteen minutes before leaving. (Doc. 1).

## II.    PROCEDURAL BACKGROUND

The plaintiff filed his initial complaint against the Pittston Police Department, Officers DeSimone, Shumosic, and Moyer, Sargent Murphy, and Police Chief Powers on June 24, 2013. (Doc. 1). Judge Schwab granted the plaintiff's motion to file an amended complaint, (Doc. 8), and the plaintiff filed his first amended complaint on October 9, 2013. (Doc. 9). Along with that complaint, the plaintiff filed three affidavits, several documents from the Pittston Police Department, and a transcript from his summary trial in July 2013. (Doc. 10, 11, 12).

The defendants jointly filed a motion to dismiss and brief in support on October 24 and 29, 2013, respectively. (Doc. 13, 15). The plaintiff filed his brief in opposition on November 14, 2013, (Doc. 18), and the defendants filed their reply brief approximately three weeks later. (Doc. 20). The plaintiff filed a sur reply brief (titled: "Plaintiff's Objection Response to the Defendants' Reply Brief") on December 9, 2013. (Doc. 21). Judge Schwab filed a report and recommendation on June 4, 2013, (Doc. 23), to which the plaintiff, (Doc. 24), and defendants, (Doc. 27), have timely filed objections.  The defendants and the plaintiff have filed briefs in opposition to the opposing party's objections, respectively. (Doc. 28, 29, 30). The issues are now ripe for the

court's ruling.


## III.   STANDARD OF REVIEW

A. The Report and Recommendation

When objections are timely filed to the report and recommendation of a magistrate judge, the district court must review *de novo* those portions of the report to which objections are made. 28 U.S.C. §636(b)(1)*; Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper. *Rieder v. Apfel*, 115 F.Supp.2d 496, 499 (M.D.Pa. 2000) (*citing United States v. Raddatz*, 447 U.S. 667, 676 (1980)).

For those sections of the report and recommendation to which no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; see also *Univac Dental Co. v. Dentsply Intern., Inc.*, 702 F.Supp.2d 465, 469 (M.D.Pa. 2010) (*citing Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987) (explaining judges should give some review to every report and

recommendation)). Nevertheless, whether timely objections are made or not, the district court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); Local Rule 72.31.

B. Rule 12(b)(6) Motion to Dismiss

The defendant's motion to dismiss is brought pursuant to the provisions of Fed. R. Civ. P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [necessary elements]" of the plaintiff's cause of action. *Id.* Furthermore, in

order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

12

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. *See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007)*; Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

## IV.    DISCUSSION

### A. The Pittston Police Department

The plaintiff asks this court to reconsider Judge Schwab's recommendation that the Pittston Police Department be dismissed because of an "inadequacy of police training." (Doc. 24, p. 3). It is well established that "a municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under §1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 691 (1978)*; Grayson v. Mayview State Hosp.*, 293 F.3d 103 (3d Cir. 2002). Therefore, a municipal defendant "can only be liable when the alleged constitutional violation implements or executes a policy, regulation

13

or decision officially adopted by the governing body or informally adopted by custom," better known as *Monell* liability. *Para v. City of Scranton*, 2008 WL 2705538, *17 (M.D. Pa. July 10, 2008) (citing Monell, 436 U.S. at 694). Moreover, "[t]o establish that a policy is in violation of the constitution, a single incident by a municipal employee is insufficient to establish that an official custom or practice caused the alleged constitutional violation." *Para*, 2008 WL 2705538, at *19 (*citing Oklahoma City v. Tuttle*, 471 U.S. 808, 822, (1985)). "Failure to adequately screen or train municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations." *Berg v. County of Allegheny*, 219 F.3d, 261 (3d Cir. 2000)(*citing Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 408-09 (1997)).

As noted in Judge Schwab's report, a police department is merely an arm of a local municipality and cannot be sued for constitutional violations under §1983 based on a theory of *respondeat superior*. *Padilla v. Township of Cherry Hill*, 110 F.App'x 272, 278 (3d Cir. 2004). Therefore, the plaintiff must demonstrated the department's failure to train caused a pattern of constitutional violations to establish *Monell* liability. No such pattern has been alleged. Although the plaintiff argues that the two incidents demonstrate a

14

pattern of antagonism toward him, they are insufficient to show a deliberate or conscious choice by the Pittston Police Department[5] to enact an official policy or practice that would likely result in constitutional violations. One alleged incident involved an officer seeking a complaint that ended with the plaintiff's conviction, while the other was a brief seizure by a different officer. The plaintiff's involvement in both is the only common thread. He has failed to establish a §1983 *Monell* failure-to-train claim against the Pittston Police Department and it is **DISMISSED WITH PREJUDICE** from this action.

### B. The Fourth Amendment Claim

The court will first deal with all of the remaining defendants other than Officer DeSimone. A plaintiff must either allege an individual's "personal involvement" in the constitutional violations or, in the case of supervisory liability, that the supervisor personally directed the action or had actual knowledge and acquiesced to such activity. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)(citing *Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)*). The plaintiff's fourth amendment violation stems from an interaction with Officer DeSimone. There are no allegations or facts that could

---

[5]The court assumes without deciding that the Pittston Police Department is a policy making body for the City of Pittston and had the authority to create official police policy on behalf of the city.

implicate the other defendants. There is nothing before the court to show they directed Officer DeSimone to take such action or even knew about it. Further, assuming that Sargent and Chief Powers were Officer DeSimone's supervisors, *respondeat superior* is not a proper vehicle for liability under §1983.[6] *Id.* Given there are no averments as to implicate Officers Shumosic and Moyer, Sargent Murphy, or Chief Powers, the fourth amendment claims against them will be **DISMISSED WITH PREJUDICE**.

Turning to Officer DeSimone, the court must determine whether a seizure occurred and, if one did occur, when the plaintiff was seized for fourth amendment purposes. The defendants claim that the encounter was not a seizure and argue that asking for a license does not constitute a seizure, that the plaintiff could have left the encounter at any time, and the interference was a *de minimis* constitutional violation. The court disagrees, at this stage of the litigation, with each of these assertions.

Generally, warrantless seizures are *per se* unreasonable under the fourth amendment. *Carman v. Carroll*, 749 F.3d 192, 200 (3d Cir.

---

[6]The plaintiff alleges that there is a "pattern" arising from both of these encounters. The court finds there is no evidence to show how these two incidents were connected or interrelated in any manner. The defendant alleges that he was seized because he filed this lawsuit, but the filing of a civil complaint is distinct from the events giving rise to such a complaint.

2014)(quoting *United States v. Williams*, 413 F.3d 347, 351 (3d Cir.2005)). A seizure occurs when an officer uses physical force or an individual submits to a show of official police authority. *U.S. v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006)(citing *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). When an officer conducts a brief, investigatory stop, such a limited seizure needs to be supported by reasonable and articulable suspicion that criminal activity is afoot and the person seized is involved. *Carroll*, 749 F.3d at 200. Therefore, the question is two-fold: (1) when was the plaintiff seized and (2) what information was available to the officer to justify that seizure.

The plaintiff alleges that Officer DeSimone pulled up in an unmarked car with its light illuminated, blocked his car, exited, twice demanded that he empty his pockets, called for back-up, and ordered he provide him ID. The defendants first contend that Judge Schwab improperly characterized the evidence when she found that the plaintiff's car was blocked. (Doc. 27, p. 9). This argument is without merit. Although the plaintiff's car may have been parallel parked, Judge Schwab accurately stated that "at this stage of the proceedings, we must accept the well-pleaded factual allegations in the amended complaint as true, and [the plaintiff] alleges that [Officer] DeSimone blocked his car." (Doc. 23, p. 13, n.2). The court must accept the plaintiff's

17

allegation that his car was blocked and that he was unable to drive away.

The defendants further contend that the plaintiff was not prohibited from "going on his merry way either outside or returning to the bar." (Doc. 27, p. 10). The defendants improperly characterize the encounter. According to the complaint, Officer DeSimone demanded the plaintiff "empty his pockets " and the plaintiff refused, claiming he was being targeted because of a civil lawsuit against the Pittston Police Department. The officer again made the same demand and when the plaintiff refused a second time, he then called for back-up. (Doc. 9). First, an initial request for a license is far different from an immediate order that a civilian empty his pockets. *Compare U.S. v. Frost*, 999 F.2d 737, 740(3d Cir. 1993)(no seizure where officers asked to speak to defendant, requested that he provide his identification, and he then agreed to empty his pockets). Second, the officer was escalating the situation by making the same demand twice and calling more officers to the scene after the plaintiff again refused to comply. The argument that the plaintiff was free to leave by any means is without support given the totality of the circumstances.

The defendants further contend that an officer can ask for identification and run a warrant check without implicating the fourth amendment. (Doc. 27,

p. 7). In support of their argument, they point this court to a case out of the Tenth Circuit, *U.S. v. Separza-Mendoza*, 386 F.3d 953, 960 (10th Cir. 2004). In that case, police responded to a domestic dispute and, after speaking to those involved, asked for identification from a person whose car was damaged. That court held there was no seizure despite the request for the license being made in a declaratory manner. *Id.* They specifically noted, however, that "the fact that the request was made in a declaratory rather than interrogatory sentence" is relevant in evaluating the totality of the circumstances. *Id.* Here, the officer was not approaching the plaintiff as a potential witness or victim, but immediately upon arrival blocked his car, approached the plaintiff, and twice demanded he empty out his pockets, despite plaintiff's verbal objections. Further, when the plaintiff failed to comply for a second time, he called for back-up. Once the plaintiff was in compliance, he then said "Give me your ID. I want to run a warrant check on you." (Doc. 9). *Esparza-Mendoza* represents a more casual encounter, while this was an escalating event. The facts are distinguishable from this case in many respects. *Esparza-Mendoza* and its reasoning are neither controlling, nor persuasive.

Finally, the defendants argue that the plaintiff's seizure was a *de*

19

minimis violation of his fourth amendment rights. In support of that argument, they cite a bevy of cases outside of this circuit and also analogize malicious prosecutions claims from within this circuit. *See, e.g., Haagensen v. Pennsylvania State Police*, 490 F. App'x 447, 453 (3d Cir. 2012)(holding no seizure in requiring a defendant to attend her trial). The court is not persuaded by these cases or arguments given the nature of the encounter, the actions of the officer, and the allegations as to why the officer approached the plaintiff. For those reasons, the court does not find this was a *de minimis* violation. *See Kelly v. Rogers*, 2012 WL 2153796, *6, n.10 (M.D.Pa. June 13, 2012)(noting that a *de minimis* argument could be presented for fourth amendment violation that lasted a few seconds).

The court agrees with Judge Schwab's finding that this was not a casual or consensual encounter, but demonstrates the plaintiff's submission because of the police officer's sudden arrival in a police car with light illuminated, the blocking of his car, the multiple authoritative orders that the plaintiff empty his pockets despite his protests, and the call for back-up. In a light most favorable to the plaintiff, he was seized when he complied with the officer's order, emptied his pockets, and showed the contents of his wallet to the officer.

Further, the plaintiff alleges that he exited the bar and gave $2.00 to a

friend prior to being approached by the officer. The complaint alleges facts,

accepted as true, that show the officer did not have reasonable suspicion of

criminal activity when the stop occurred. As such, the defendants' motion is

**DENIED** insofar as it argues the fourth amendment claims against Officer

DeSimone must be dismissed at this stage.

### C. The Harm to Reputation Claim ("Stigma-Plus")

Although Judge Schwab concluded that the plaintiff failed to state a

constitutional claim for harm to reputation, the court will also dismiss this

claim against Officers DeSimone and Moyer, Sargent Murphy, and Chief

Powers for the same lack of personal involvement discussed in section III(B)

above. There is no allegation that they were in any way involved in

broadcasting the "armed and dangerous" warning over the radio. Further,

there is nothing to demonstrate any of these officers participated in the

procurement of any warrant, the alleged search for the plaintiff, the filing of

the criminal complaint, or final prosecution against the plaintiff. For those

reasons, the harm to reputation claims against Officers DeSimone and

Moyer[7], Sargent Murphy, and Chief Powers are **DISMISSED WITH**

---

[7]Although the plaintiff's mother claims she had a conversation with Officer Moyer about the warrant and pursuit of the plaintiff, it appears he was at the police station while all of these other alleged events were occurring.

**PREJUDICE**.

The only officer who was involved with the alleged broadcast and prosecution was Officer Shumosic. The plaintiff claims that he has alleged a proper slander/defamation claim. (Doc. 24, p. 3). The court will construe this objection broadly to include the §1983 count for harm to reputation.

In order to have a cognizable claim under §1983, a plaintiff must show some injury beyond a damaged reputation caused by false statements made publically, better known as the "stigma-plus" test. *Machon v. Pennsylvania Dept. of Public Welfare,* 847 F.Supp.2d 734, 747 (E.D.Pa. 2012); *Garner v. Township of Wrightstown,* 819 F.Supp. 435, 441 (E.D.Pa. 1993). Assuming the "stigma" is satisfied through the alleged false statements broadcast publically by Officer Shumosic, the court must determine whether there is a "plus," or other constitutional violation, flowing from those statements. The additional deprivation must be a loss of some tangible right or interest, such as termination of public employment. *Hill v. Borough of Kutztown,* 455 F.3d 225, 237 (3d Cir. 2006). If the false information disseminated by a police officer leads to a loss of fourth amendment rights, such as an unlawful seizure

---

Beyond this discussion, there are no allegations that either involve Officer Moyer directly or could circumstantially imply his involvement.

or prosecution, it would satisfy the "plus" necessary to state a claim. *See Rehberg v. Paulk*, 611 F.3d 828, 853 (11th Cir. 2010)(noting that "free from malicious prosecution and unreasonable detention under the Fourth Amendment" may be sufficient for the "plus" requirement). However, there must be a causal connection between the stigma and the loss of rights to satisfy this requirement. *See MFS, Inc. v. DiLazaro*, 771 F.Supp.2d 382, 436 (E.D.Pa. 2011)("Some other interest or right must be adversely affected, along with stigma to reputation before a liberty interest is shown to exist.")

Here, the plaintiff merely claims that Officer Shumosic falsely broadcasted that he was "armed and dangerous," and that he also said the defendant went to someone's home with a gun looking for his daughter. The affidavit in support of the criminal complaint makes no mention of the plaintiff being "armed and dangerous" or having a gun. As such, those statements did not contribute to his prosecution. Further, the plaintiff does not make any mention of whether he was arrested or if he was even taken into custody based on these statements. Without a seizure or other constitutional violation flowing from those allegedly false communications, there is no deprivation of a protected liberty interest. As there is no connection between the allegedly stigmatizing communications and a subsequent deprivation, this claim fails.

23

The plaintiff's §1983 harm to reputation claim is **DISMISSED WITH PREJUDICE**.

### D. The Abuse of Process Claim

Judge Schwab concluded that the plaintiff failed to state a constitutional claim for abuse of process. The plaintiff objected to this ruling, claiming that the false statements contributed to an abuse of process. First, the court will dismiss this claim against Officers DeSimone and Moyer, Sargent Murphy, and Chief Powers for the same lack of personal involvement discussed in section III(B) and (C) above. Because they were not personally involved in the arrest, charging, or prosecution of the plaintiff, the abuse of process claims against Officers DeSimone and Moyer, Sargent Murphy, and Chief Powers are **DISMISSED WITH PREJUDICE**.

As to the abuse of process claim against Officer Shumosic, "a section 1983 claim for malicious abuse of process lies where 'prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law.'" *Rose v. Bartle*, 871 F.2d 331, 350 n.17 (3d Cir. 1989)(quoting *Jennings v. Shuman*, 567 F.2d 1213, 1217 (3d Cir.1977)). As Judge Schwab noted, when a criminal complaint is issued and a prosecution initiated, the prosecuting officials are entitled to carry it out to an authorized conclusion.

24

*Bristow v. Clevenger*, 80 F.Supp.2d 421, 431 (citing *Cameron v. Graphic Management Assoc., Inc.*, 817 F.Supp. 19, 21 (E.D.Pa.1992)). It is only when the process is used for an illegitimate purpose, such as extortion, forcing a defendant to surrender a legal right, or blackmail, that a claim for abuse of press lies. *Id.*

Here, the plaintiff alleges that Officer Shumosic engaged in an abuse of process when he filed a false affidavit in support of a criminal prosecution. However, the plaintiff has failed to demonstrate any facts that show how this process was used for an illegitimate purpose to extract something from the plaintiff. Further, if the court were to construe this as a claim for malicious prosecution, that claim is barred because the plaintiff has failed to show the proceedings terminated in his favor. The plaintiff was found guilty of disorderly conduct and fined. (Doc. 10; footnote 1, *supra*). *See Kossler v. Crisanti*, 564 F.3d 181, 188 (3d Cir. 2009)(favorable termination requires the judgement to demonstrate "the plaintiff's innocence of the alleged misconduct underlying the offenses charged"). For those reasons, the plaintiff's abuse of process claim is **DISMISSED WITH PREJUDICE**.

E. The Defamation Claim

The plaintiff initially appears to agree with Judge Schwab's

determination that his defamation claim is best suited for state court. (Doc. 24, p. 2). However, on the next page of his objection, he argues that he has pleaded a defamation/slander claim. The court construes this as an objection as to whether this court should exercise supplemental jurisdiction over his defamation claim.

In order to exercise supplemental jurisdiction over the state-law defamation claim, "the Court must determine whether the two claims arise from a common nucleus of operative fact." *Doherty v. Teamsters Pension Trust Fund of Philadelphia and Vicinity*, 142 F.App'x 573, 575 (3d Cir. 2005)(citing 28 U.S.C. §1367). The two claims are factually diverse and do not share any common actors or circumstances. Although the plaintiff generally claims these are part of a pattern of antagonism by the Pittston Police Department, there is nothing in the complaint or attached exhibits to connect the two. As such, the defamation claim is **DISMISSED WITHOUT PREJUDICE** to refiling in the proper state court in Pennsylvania, should the plaintiff decide to do so.

Lastly, as Judge Schwab discusses, the plaintiff has provided the court with a bevy of factual allegations and has amended his complaint previously. As such, further leave to amend need not be granted.

26

## V.    CONCLUSION

For the reasons discussed above, Judge Schwab's report and recommendation is **ADOPTED IN FULL** and the defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. The plaintiff's §1983 claims for harm to reputation and abuse of process are **DISMISSED WITH PREJUDICE**. The plaintiff's claim of defamation is **DISMISSED WITHOUT PREJUDICE** to refiling in a proper state court. The Pittston Police Department, Officers Moyer and Shumosic, Sargent Murphy, and Chief Powers are **DISMISSED with prejudice** from this action entirely. In all other respects, the defendants' motion is **DENIED**. The case will be **REFERRED** to Judge Schwab for further pre-trial proceedings. An appropriate order shall issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

Dated:   **July 28, 2014**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2013 MEMORANDA\13-1714-01.wpd