## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**ROBERT WILLIAM MAWSON, SR.,** :

    **Plaintiff**           :    **CIVIL ACTION NO. 3:13-1714**

    **v.**               :       **(JUDGE MANNION)**

**THE PITTSTON POLICE**    :
**DEPARTMENT,** *et al.*,
                       :

    **Defendants**

## <u>MEMORANDUM</u>

Pending before the court is the report of Judge Schwab, (Doc. 90), which recommends that the Court deny the defendant, Officer DiSimone's motion for summary judgment because material factual disputes remain. Based upon the court's review of the record, the court will **ADOPT in part and NOT ADOPT in part** Judge Schwab's Report and Recommendation, and therefore partially **GRANT** the defendant's motion for summary judgment on qualified immunity grounds solely in relation to the defendant's initial decision to stop the plaintiff.

## I.    PROCEDURAL BACKGROUND

By way of relevant background, on June 24, 2013, Robert William Mawson, Sr., the plaintiff, filed a complaint and an application to proceed *in*

*forma pauperis*. (Docs. 1, 2). The plaintiff was granted leave to proceed *in forma pauperis*; however Judge Schwab, after screening the complaint, concluded that it failed to state a claim upon which relief may be granted, but granted the plaintiff leave to file an amended complaint. (Doc. 8).

The plaintiff filed his amended complaint on October 8, 2013, naming the Pittston City Police Department along with five police officers as defendants. (Doc. 9). In his complaint, the plaintiff asserted numerous claims arising from two incidents involving the Pittston City Police Department. *Id.* Pursuant to this court's order on July 28, 2014, all but one of the plaintiff's claims have been dismissed, (Doc. 34), and all defendants except for Officer DiSimone ("defendant") have been dismissed from the action entirely. *Id.* The remaining claim alleges that Officer DeSimone seized the plaintiff in violation of his Fourth Amendment rights, and the plaintiff is seeking compensatory and punitive damages. *Id.*

On August 29, 2014, the defendant filed his answer to the amended complaint, denying plaintiff's allegations and asserting numerous affirmative defenses, including the defense of qualified immunity. (Doc. 40). After a case management conference was held, (Doc. 42), the parties began discovery. After numerous telephone conferences to resolve discovery disputes and challenges, the parties completed discovery. (Docs. 44-68). The defendant then filed a motion for summary judgment, on January 19, 2015, on the

grounds that he is entitled to qualified immunity and that the plaintiff abused his *in forma pauperis* status. (Doc. 69). The plaintiff initially filed a brief in opposition to the motion for summary judgment, but failed to respond to the defendant's statement of material facts. (Doc. 73). The plaintiff then filed a motion for the court to rule on whether the defendant had improperly withheld discovery. (Doc. 79). Judge Schwab denied the plaintiff's motion and ordered him to file a response to the defendant's statement of material facts filed in support of the defendant's motion for summary judgment. (Doc. 83). Finally, in March and April of 2015, the plaintiff filed his response to the defendant's statement of material facts through a series of submissions to the court, where he disputed most facts presented by the defendant. (Docs. 85-89).

Upon completion of briefing for the defendant's motion for summary judgment, Judge Schwab submitted her report and recommendation ("R&R"), which proposed that the motion for summary judgment be denied. (Doc. 90). The plaintiff timely filed what he titles "Letter/Objections" in response to Judge Schwab's  R&R on September 16, 2015. (Doc. 91).The defendant  filed objections to the R&R on September 28, (Doc. 92, 93), and filed a response to the plaintiff's objections (or "Letters/Objections") on September 30, 2015. (Doc. 94). Finally, on October 5, 2015, the plaintiff filed a response to the

3

defendant's objections. (Doc. 95).[1]

## II.   STANDARD OF REVIEW

When objections are timely filed to the report and recommendation of a magistrate judge, the district court must review *de novo* those portions of the report to which objections are made. 28 U.S.C. §636(b)(1); Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011). Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper. Rieder v. Apfel, 115 F.Supp.2d 496, 499 (M.D.Pa. 2000) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

However, Federal Rule of Civil Procedure 72 states that a "a party may serve and file specific written objections to the proposed findings and recommendations," Fed.R.Civ.P. 72, and Local Rule 72.3 further explains that objections "shall *specifically identify* the portions of the proposed findings, recommendations or report to which objection is made and the *basis for such*

---

[1] The plaintiff also filed a "letter" to the court in which he attached his previously submitted response to the defendant's objections, and also attached a document entitled, "The Plaintiffs Responce to Defendants Objection to the Plaintiffs Partial Objection Filed Sept 16, 15." (Doc. 96, pp. 32-46 (sic)). This attachment includes a stamp from the clerk's office dated October 6, 2015; however, the document was not filed in the docket until October 16, 2015 as part of Doc. 96.

*objections*." Local Rule 72.3 (emphasis added). This requires a party to specifically point to the Magistrate Judge's arguments, findings, or errors to which he objects and identify the basis for such objection. *Id.*; Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984). If a party fails to do so, then "a court is not required to address those objections."  Pellicano v. Blue Cross Blue Shield Ass'n, No. 11-406, 2012  WL 1828027, at *3 (M.D. Pa. May 18, 2012) *aff'd*, 540 F. App'x 95 (3d Cir. 2013) (citing Reid v. Lawler, No. 085674, 2010 WL 1186320, at *3 (E.D.Pa. Mar.25, 2010)).

For those sections of the report and recommendation to which no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; *see also* Univac Dental Co. v. Dentsply Intern., Inc., 702 F.Supp. 2d 465, 469 (M.D.Pa. 2010) (citing Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987) (explaining judges should give some review to every report and recommendation)). Nevertheless, whether timely objections are made or not, the district court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); Local Rule 72.3.

## III.   DISCUSSION

Both the plaintiff and the defendant filed objections to Judge Schwab's R&R, and each party's objections will be reviewed by the court in turn. Judge Schwab thoroughly reviewed the briefs and statements of material facts offered by both parties, and made material factual findings noting which facts are disputed by the parties. (Doc. 90, pp. 6-12). The court agrees that these facts are supported by the record and thus adopts and incorporates by reference Judge Schwab's factual findings for the purposes of this memorandum.[2] *Id.*

### A.    Plaintiff's Objections

Judge Schwab's report recommended that the defendant's motion for summary judgment be denied, a favorable result for the plaintiff. Despite the favorable ruling, the plaintiff filed a document, "Letter/Objections," that appears to contain objections to Judge Schwab's R&R.

The plaintiff asserted seven (7) numbered objections, (Doc. 91); each will be briefly identified. Objection 1 alleges that the police report prepared by the defendant regarding the incident from which this action arises was falsified. The second objection argues that the defendant withheld the names

---

[2] The defendant objects that it "*appears* that the Magistrate Judge may have misconstrued the facts," (Doc. 92, ¶1-2) (emphasis added); however, his interpretation is incorrect, as will be discussed below in the court's review of the defendant's objections.

of all of the police officers present at the scene during discovery. Objection 3 claims that there was "intence[sic] police intrusion" supported by Debbie Williams' sworn deposition. (Doc. 91, p. 3). Next, in objection 4, the plaintiff objects to the defendant's assertion that Dayna Williams is a known drug addict. Objection 5 relates to whether Stefanie's Bar, the location of the incident, is part of an FBI investigation; the plaintiff states that there is no evidence of this and this fact arose after the close of discovery. In Objection 6, the plaintiff identifies instances of bad faith and deceit on the part of the defendant since this action commenced. The seventh and final objection complains that the defendant targeted the plaintiff and retaliated against the plaintiff for another pending lawsuit that the plaintiff commenced against the Pittston City Police Department.

Throughout his objections, the plaintiff fails to specifically identify any portion of Judge Schwab's R&R to which he objects; in fact, the plaintiff does not mention the R&R at all. The plaintiff also fails to identify the basis or grounds for each objection, as required by Local Rule 72.3. All of the objections are either reiterations of previous arguments from the plaintiff's earlier pleadings or facts previously presented in his material facts statements that he wants this court to note (most notably those presented in documents he submitted in opposition to the instant summary judgment motion), which have already been considered and referenced in the R&R of Judge Schwab.

(Docs. 73-75, 79, 85-89); *see generally* Doc. 91. Given his failure to comply with the Local Rules, the court need not address the plaintiff's objections in its review of Judge Schwab's R&R,[3] and must solely review the R&R for clear error.

The court also notes that the purpose of summary judgment is not to determine the merits of the case, but is to determine if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no *genuine issue as to any material fact* and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Turner v. Schering–Plough Corp., 901 F.2d 335, 340 (3d Cir.1990). Here, the defendant moved for summary

---

[3] Note that the plaintiff's first objection relating to falsification of the police report does not point to or identify a specific portion of the R&R, however, the objection does correspond to a specific finding by Judge Schwab in footnote 2 of the R&R. In addition, the defendant, in his response to the objections, addresses the falsification issue. (Doc. 94, p. 2). Therefore, in an abundance of caution the court will review Judge Schwab's footnote 2 finding *de novo*. This court finds the conclusion correct and adopts the finding that "[t]here is no basis for a reasonable trier o[f] fact to conclude that the reports in this case were falsified." (Doc. 90, p. 7). The absence of the police officer's signature on a police report does not render it false, and the markings on the bottom of the page noted by Judge Schwab and the defendant, are clearly and indisputably facsimile and printing annotations. The plaintiff presents no evidence or affidavits that would create a genuine dispute or on that basis would lead one to reasonably conclude that the police report is false.

judgment on the grounds that he is entitled to qualified immunity and that the plaintiff abused his *in forma pauperis* status. Judge Schwab found that there existed genuine disputes of material fact and recommended denial of the defendant's motion for summary judgment. (Doc. 90). The plaintiff's objections seek to: establish additional factual disputes beyond those identified by Judge Schwab; set forth arguments supporting plaintiff's case on the merits; and complain about discovery disputes. Even if the court were to address the plaintiff's objections, they would have no effect on the outcome of the instant motion.

### B.    Defendant's Objections

Officer DiSimone, the defendant, filed several objections to Judge Schwab's R&R. (Doc. 92, 93). Each objection, unlike the plaintiff's objections, points to a particular ruling and portion of the R&R to which the defendant objects and identifies the basis for such objection, in accordance with Local Rule 72.3. The defendant's objections will thus be reviewed *de novo* below.

### 1.    Judge Schwab's Interpretation of the Facts

The defendant first objects to the R&R on the grounds that Judge Schwab "may have misconstrued the facts" by finding that "Mawson <u>never</u> put

his hand back in his pockets after giving money to Dayna Williams." (Doc. 93, p. 12) (emphasis in original). This objection has no merit because Judge Schwab never found that the plaintiff, Robert Mawson, never returned his hand to his pocket after the money exchange with Dayna Williams. Judge Schwab noted both parties' versions of the facts describing the money exchange between the plaintiff and Dayna Williams, and then viewed the facts in a light most favorable to the plaintiff's version of the facts, as the plaintiff is the nonmoving party. Judge Schwab's description of the plaintiff's version of the incident includes the following: "[Mawson] did not shake hands with Sult and he did not put his hand in his pocket, take it out and look at something, and then put his hand back in his pocket." (Doc. 90, p. 10). This description is not a conclusion that the plaintiff never put his hand back in his pocket, rather it states that he did not do all the actions as they were described in the defendant's police report, more specifically that the plaintiff did not do the actions in the *particular sequence* described.[4] Nowhere in the R&R does Judge Schwab note or conclude that the plaintiff never returned his hand to

---

[4] The plaintiff's response to the defendant's objections is consistent with the court's conclusion. The plaintiff asserts that he disputes that the actions enumerated above occurred at one time, in sequence, but does not dispute that the plaintiff never returned his hand to his pocket. (Doc. 95, p. 6).

his pocket, nor did she find that he did return his hand to his pocket.[5] Therefore, the defendant's objection that Judge Schwab erred in misconstruing the evidence is overruled.

### 2.    Judge Schwab's Denial of Qualified Immunity

The defendant also raises an objection regarding Judge Schwab's recommendation that the court deny qualified immunity. The qualified immunity analysis has two prongs. Pearson v. Callahan, 555 U.S. 223, 232 (2009); Saucier v. Katz, 533 U.S. 194, 201–02, *abrogated in part by Pearson,* 555 U.S. 223; Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007); Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006). One prong of the analysis is whether the facts that the plaintiff has alleged or shown make out a violation of a constitutional right. *Id.* The other prong of the analysis is whether the right was clearly established, *Saucier*, 533 U.S. at 201, or rather whether a reasonable state actor under the circumstances would understand that his conduct violates that right. *Williams*, 455 F.3d at 191. The court is permitted to

---

[5] The court declines to make a finding that the plaintiff did return his hand to his pocket, because the defendant's evidentiary support for such contention was not provided to Judge Schwab in any of the defendant's submissions to the court supporting his motion for summary judgment. This evidence has only been submitted to this court as part of the defendant's objections. (Doc. 93, Ex. 1). Thus, the Magistrate Judge had no opportunity to review the evidence in preparing the R&R.

exercise its discretion in deciding which of the two prongs of the qualified-immunity analysis should be addressed first in light of the circumstances of the particular case. *Pearson*, 555 U .S. at 236.

The defendant objects to the second prong of the qualified immunity analysis: whether the law was clearly established. (Doc. 93, p. 13). Specifically, in his objection, the defendant argues that the R&R only included a discussion of the clearly established law as it relates to the defendant's version of the facts, but never analyzed the relevant law as it relates to the plaintiff's version of the facts, or the undisputed facts. Pursuant to Third Circuit precedent, when undergoing the second prong of the qualified immunity analysis, the court must objectively "consider the state of the existing law at the time of the alleged violation and the circumstances confronting the officer to determine whether a reasonable state actor could have believed his conduct was lawful." Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010) (quoting *Saucier*, 533 U.S. at 201); *see also* Gruenke v. Seip, 225 F.3d 290, 299 (3d Cir. Pa. 2000). Because the state actor's specific conduct must be examined, the court must make "a careful examination of the record . . . to establish, for purposes of summary judgment, a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff)." Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996); *see also Gruenke*, 225 F.3d at 300.

12

Should factual disputes that are material to the qualified immunity analysis remain at the summary judgment stage, then Third Circuit precedent requires that the questions of fact go to a jury. Curley v. Klem, 499 F.3d 199, 210 (3d Cir. 2007); Monteiro v. City of Elizabeth, 436 F.3d 397, 405 (3d Cir. 2006) ("[W]hen qualified immunity depends upon disputed issues of fact, those issues must be determined by the jury."); Zorbah v. Sch. Dist., 2014 WL 535242, *6 (E.D. Pa. Feb. 10, 2014) ("[W]hen the issue of qualified immunity requires resolution of factual disputes, the court must defer consideration of immunity until the factual issues are resolved by a jury."); *see also* McKoy v. Carter, 543 Fed. Appx. 231, 235 (3d Cir. 2013) (not precedential authority).

Judge Schwab, relying on *Monteiro v. City of Elizabeth*,  rejected the defendant's qualified immunity claim under the second prong because it was based upon *disputed* facts, namely, that the defendant saw "an exchange of money for an object that Mawson secreted in his pocket." (Doc. 90, p. 22). While the court agrees with Judge Schwab's analysis of the applicable law and factual disputes, we find that she ended the qualified immunity inquiry prematurely for two reasons. First, the court must analyze whether the law was clearly established as to the *plaintiff's,* the non-moving party's version of the facts. If the law is not clearly established as to both the plaintiff's version of the facts and the defendant's version of the facts, then any factual dispute will be immaterial to the qualified immunity analysis, thus warranting summary

13

judgment on the ground of qualified immunity. Second, as the defendant asserts in his objections, his qualified immunity argument, under prong two of the analysis, does *not depend* upon disputed facts; on the contrary, the defendant states that he relies solely upon undisputed facts to establish qualified immunity: that "Officer DeSimone witnessed a hand-to-hand money exchange at a place known for drug trafficking late in the evening with a known addict." (Doc. 92, ¶ 6).[6] If all facts material to the qualified immunity assessment are undisputed, then the court need only determine whether the undisputed facts satisfy the second prong of the analysis.

Thus, the defendant's qualified immunity defense essentially rests upon whether the law is clearly established that a police officer would not have reasonable suspicion to conduct a *Terry* stop in the following factual scenario: a money exchange with a known drug user, witnessed by an experienced

---

[6] The defendant, in his objections, accurately notes that all his submissions to the court relating to qualified immunity solely rely upon facts that are undisputed. (Doc. 93, p. 14 (citing Doc. 71, pp. 10-14; Doc. 76, pp. 1-5)). The only potentially disputed fact that the defendant references in support of his argument for qualified immunity is the fact that the incident occurred "after midnight." *See* Doc. 71, p. 11. The plaintiff, on the other hand, provided affidavits that indicate that the incident took place "at night" rather than after midnight. (Doc. 87, ¶¶ 2, 4). While Judge Schwab correctly states in the R&R, "at night" and "after midnight" are not necessarily inconsistent or disputed, (Doc. 90, p. 9, footnote 4), this court will view the facts in the light most favorable to the plaintiff and treat the incident as occurring "at night" for the purposes of qualified immunity.

14

police officer at night, in a high-crime area. The court will review the law to determine whether this prong of the analysis can be established under the abovementioned, undisputed facts.

As stated above, a law is clearly established if a reasonable police officer would know that his conduct in a particular situation violated clearly established law. Saucier v. Katz, 533 U.S. 194, 202 (2001). "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate,'" Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012) (quoting Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2083 (2011)), in such way that a police officer would be on notice that his conduct violated the law. *See* Bayer v. Monroe County Children & Youth Services, 577 F.3d 186, 193 (3d Cir. 2009). There need not be a controlling case directly on point, however, the Supreme Court has explained that clearly established law requires "cases of controlling authority . . . at the time of the incident which clearly established the rule on which they seek to rely. . . [or] a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." Wilson v. Layne, 526 U.S. 603, 617 (1999); Ashcroft, 131 S.Ct. 2074, 2084 (2011) (citing *Wilson*, 526 U.S. at 617).

At the time of the alleged violation, the Supreme Court case *Terry v. Ohio* and its progeny governed the defendant's actions. Terry v. Ohio, 392 U.S. 1 (1968). The Supreme Court in *Terry* held that law enforcement may

conduct brief investigatory stops when an "officer has a *reasonable, articulable* suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (citing *Terry,* 392 U.S. at 30) (emphasis added). "[I]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Terry v. Ohio, 392 U.S. at 27; *see also Wardlow,* 528 U.S. at 123-24. This requires "at least a minimal level of objective justification for making the stop." *Wardlow,* 528 U.S. at 123; United States v. Brown, 765 F.3d 278, 290 (3d Cir. 2014). Objective justification is based upon the totality of the circumstances, which may include an individual's location, a history of crime in the area, an individual's nervous behavior and evasiveness, and an officer's commonsense judgments and inferences about human behavior. Johnson v. Campbell, 332 F.3d 199, 206 (3d Cir. 2003) (citing *Wardlow,* 528 U.S. at 124-25; United States v. Arvizu, 534 U.S. 266, 273 (2002)); *see also* United States v. Goodrich, 450 F.3d 552, 561-62 (3d Cir. 2006) (holding that an individual's presence in a high-crime area and the lateness of the hour of the stop are factors that support an inference of criminal activity and a finding of reasonable suspicion). Each of these factors alone may not justify a *Terry* stop; however, taken together, they may raise the level of suspicion to satisfy the reasonable suspicion standard.

*Wardlow*, 528 U.S. at 124; *Goodrich*, 450 F.3d at 561. Finally, police officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Arvizu*, 534 U.S. at 273 (quoting United States v. Cortez, 499 U.S. 411, 418 (1981)).

In the instant action, the defendant, a police officer trained and experienced in drug deals, was conducting surveillance for suspected drug transactions outside Stephanie's Bar, a place known for drug trafficking. The defendant conducted his surveillance at night and observed the plaintiff exchange money with a known drug user outside the bar. In his objections, the defendant states that the "Third Circuit has held that these facts support reasonable suspicion" or probable cause, a much higher standard. (Doc. 93, p. 19). Thus, the defendant concludes that the law is clear not that the defendant's behavior was a violation of the Fourth Amendment, but rather that the defendant's behavior was constitutional.

The defendant first cites to three Court of Appeals cases, two of which come from the Third Circuit, with similar facts that were held to support reasonable suspicion. (Doc. 93, p. 19). However, upon reviewing these cases, this court concludes that each is distinguishable from the facts relating to the plaintiff's case. Though similar because they involve money exchanges in high crime areas, these cases also include additional significant facts that weigh

17

in favor of reasonable suspicion and are not present in this case. *E.g.* United States v. Smith, 282 F. App'x 143 (3d Cir. 2008) (finding a money exchange in a high crime area coupled with flight by the suspect and a police chase amounted to reasonable suspicion); United States v. McGlory, 968 F. 2d 309 (3d Cir. 1992) (finding an exchange of cash between a suspect and a known *drug trafficker*, who had an established modus operandi, in a high-crime location, late at night amounted to reasonable suspicion); United States v. Williams, 139 F. 3d 628, 630 (8th Cir. 1998) (finding that an experienced narcotics officer had reasonable suspicion to stop the defendant when he observed an exchange of money for an object between a suspected drug trafficker in a high-crime area, at night).

The defendant claims that "many courts" have found that officers had probable cause, an even higher standard, to arrest under similar circumstances. (Doc. 93, p.20-21). However, the cases that defendant cites, which are all from outside this circuit, are factually distinct and simply cloud the analysis as to what constitutes reasonable suspicion. *See, e.g.*, Smith v. Tobon, 529 F. App'x 36, 39 (2d Cir. 2013) (not-precedential); United States v. Burciaga-Burciaga, 147 F. App'x 725, 730 (10th Cir. 2005); United States v. White, 655 F.2d 1302, 1304 (D.C. Cir. 1981); United States v. Roland, 2012 WL 74989, at *5 (S.D.N.Y. Jan. 10, 2012); United States v. Garcia, 2010 WL1416993, at *4 (D. Minn. Mar. 22, 2010), *report and recommendation*

*adopted*, 2010 WL 1416984 (Apr. 7, 2010), *aff'd*, 646 F.3d 1061 (8th Cir. 2011); United States v. Washington, 2003 WL 21250681, at *3 (S.D.N.Y. May 29, 2003). Though the listed cases have many factual distinctions–ranging from the presence of informants' tips, controlled purchases, to targeted surveillance–the most notable difference between all of the cases and the present action, is that the police agents in these cited cases observed money exchanged *for an object*. The undisputed facts in this case do not include money exchanged for any object at all. In addition, the defendant cites to a Supreme Court opinion denying certiorari, in which the dissent states that probable cause would be present when a police officer observes a hand-to-hand drug deal in a high-crime area. (Doc. 93, p. 21 (citing Pennsylvania v. Dunlap, 555 U.S. 964 (2008)). This opinion once again notes that the police officer observed money exchanged for *an object*, which is not the case here. Moreover, the Supreme Court opinion cited is a dissent, which is non-binding upon this court and this jurisdiction.

Ultimately, there is an abundance of case law explaining and identifying what constitutes "reasonable suspicion" under slightly similar circumstances. However, in our review of the both the relevant case-law and the case-law presented by the defendant, this court was unable to locate a case whose facts were directly analogous. Many cases, as mentioned above, included similar facts, but none contained the same or nearly the same combination of

relevant facts as those present in the plaintiff's case, such that a police officer would definitively conclude that his actions were a violation of the Fourth Amendment. Though this court did not find binding or strongly persuasive authority expressly prohibiting a *Terry* stop under analogous factual circumstances,[7] this court also did not, as the defendant would like the court to believe, find binding or strongly persuasive authority establishing that these facts clearly amount to reasonable suspicion or probable cause.

Thus, the law regarding *Terry* investigative stops at the time of the incident as it pertains to the specific, undisputed facts of this case is not clearly established. No binding precedent and no clear consensus amongst persuasive authority demonstrates that the defendant should have known that

---

[7] The closest this court came to finding a case to support the plaintiff's claim that the defendant clearly did not have reasonable suspicion was the district court opinion *United States v. McCray.* United States v. McCray, 148 F. Supp. 2d 379, 387-88 (D. Del. 2001). In *McCray*, two police officers observed two individuals standing near a loiterer who was known for drug activity in a high-crime area, but the officers did not observe any exchange or any objects pass between the parties. *Id.* at 387-88. The court determined that these facts, "without more, merely constitute[ ] an 'inchoate and unparticularized suspicion,' and cannot justify a Terry stop." *Id.* However, *McCray* is distinguishable in a significant way, namely, the fact the individuals were solely in close proximity and there was no exchange of any kind. In the instant case, the suspected individuals, including the plaintiff, were standing and talking together and exchanged money. While the facts in *McCray* do not amount to reasonable suspicion, the additional facts in the instant case –i.e. existence of an observed monetary exchange–may raise the level of suspicion beyond the constitutional threshold.

his actions violated clearly established law under the circumstances.

While Judge Schwab was correct to note that factual disputes remain, the defendant's decision to conduct a *Terry* stop on the night in question was based upon undisputed material facts. No factual disputes remain that are material to the qualified immunity analysis, therefore, regardless of which version of the facts is analyzed, the defendant is entitled to qualified immunity for his decision to stop the plaintiff because his actions do not violate clearly established law.

### 2.    The Law Does Not Clearly Establish that the Stop Was *De Minimis*

The defendant next objects to Judge Schwab's determination that the *Terry* stop was not *de minimis*. The defendant states that Judge Schwab relied upon this court's ruling on the motion to dismiss and failed to analyze "whether the law is clear that the stop rose above the *de minimis* level." (Doc. 92, p. 4); (Doc. 93, p. 22). Unlike the motion to dismiss, the defendant argues that the instant motion for summary judgment is based on the defendant's alleged qualified immunity status and must be examined within that context. The defendant would like this court to find a lack of clearly established law such that the defendant's conduct during the *Terry* stop on the night of the incident would fail to satisfy prong two of the qualified immunity analysis, and

21

would therefore entitle the defendant to qualified immunity for the scope and quality of the stop. The defendant concludes that Judge Schwab erred by failing to analyze whether the case-law clearly establishes that the circumstances in this case rise above the *de minimis* threshold.

As stated in *Terry v. Ohio*, an investigative or Terry stop must undergo a dual inquiry to determine its reasonableness: "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." United States v. Sharpe, 470 U.S. 675, 682 (1985) (quoting Terry v. Ohio, 392 U.S. 1, 20 (1968)). Up to this point, the court has discussed the first part of the inquiry, whether the defendant is entitled to qualified immunity for his *initial decision* to conduct an investigative stop of the plaintiff. The court now must analyze the scope of that investigative stop and whether the law was clearly established that the scope and quality of the stop clearly constituted a violation of the Fourth Amendment. Again, for the purposes of qualified immunity, the court must determine whether the facts–taken in the light most favorable to the non-moving party–establish a violation of clearly established law and that a reasonable officer would know his actions to be in violation of such law. *See supra*. The relevant facts are heavily disputed by both parties, and unlike the previous analysis regarding initiation of the stop, the defendant

22

does not solely rely on undisputed facts to establish qualified immunity.[8]  The

relevant facts, taken in the light most favorable to the plaintiff, the non-moving

party, were set forth by Judge Schwab as follows:

> According to Mawson, DeSimone approached him, blocked his car in, and said "Empty your pockets," to which Mawson responded no and said that DeSimone was harassing him because he had filed a civil suit against the police department. Doc. 87 at 7. Mawson contends that DeSimone then again ordered him to empty his pockets, and when he was momentarily quiet, DeSimone called for back up. *Id.* Mawson then reached into his pocket, removed his wallet from his pocket, opened his wallet, and showed it to DeSimone. *Id.* According to Mawson, DeSimone then ordered Mawson to give him his I.D., and DeSimone took Mawson's I.D. and ran a lengthy warrant check on everyone. *Id.* at ¶¶7-8. Mawson contends that it was during a warrant check on Sult that DeSimone discovered that there was a warrant for Sult and that DeSimone had called for back up before he discovered the warrant for Sult. *Id.* at ¶8. Further, although DeSimone contends that two back up officers arrived, Mawson contends that more than two back up officers arrived. *Id.* Further, whereas DeSimone contends that encounter lasted only about a half an hour, *see* doc. 76 at 10, Mawson points to the deposition testimony of Edward Matyjevich that the encounter lasted nearly an hour. *See* Doc. 73 at 16; Doc. 73-4 at 29.

The law as it applies to the plaintiff's version of the facts clearly provides that

the length, intensity, and nature of the stop may establish a Fourth

Amendment violation.

*Terry v. Ohio* provides that after initially stopping an individual, the

scope of the stop must be "strictly tied to and justified by the circumstances

---

[8] In fact, the defendant does not cite or rely upon any facts to support his assertion that the stop was *de minimis*. (Doc. 93, pp. 22-26).

which rendered its initiation permissible." Terry v. Ohio, 392 U.S. 1, 19 (1968) (internal quotations and citations omitted). The Supreme Court further explained in *Florida v. Royer* that "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." Florida v. Royer, 460 U.S. 491, 500 (1983). And, the Supreme Court again examined the scope of an investigative *Terry* stop in *United States v. Place*; the Court stated "in assessing the effect of the length of the detention, we take into account whether the police diligently pursue[d] their investigation." United States v. Place, 462 U.S. 696, 709 (1983) (holding luggage over ninety minutes was a prolonged seizure and exceeded limits of investigative stop under *Terry*). Finally, the Supreme Court, in *United States v. Sharpe*, synthesized the holdings of *Terry, Royer,* and *Place* to articulate a clear rule regarding the duration and scope of investigative stops:

> In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. A court making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing.

United States v. Sharpe, 470 U.S. 675, 686 (1985) (citations omitted) (Court held that a detention of defendant for 20 minutes while original officer waited for a narcotics officer to arrive and defendant's attempts to evade the

narcotics officer contributed to delay was reasonable). This inquiry requires the court to take into account the totality of the circumstances. The Third Circuit has applied this rule and more explicitly provided that "[i]n considering whether a stop is so minimally intrusive as to be justifiable on reasonable suspicion, courts consider the duration of the stop, the law enforcement purposes justifying the stop, whether the police diligently sought to carry out those purposes given the circumstances, and alternative means by which the police could have served their purposes." United States v. Leal, 235 Fed. Appx. 937, 941 (3d Cir. 2007).

Furthermore, while the Supreme Court has acknowledged that "[t]here is, of course, a *de minimis* level of imposition with which the Constitution is not concerned," Ingraham v. Wright, 430 U.S. 651, 674 (1977), few courts have applied the doctrine and even fewer come from the Third Circuit. *See* United States v. Hernandez, 418 F.3d 1206, 1212 n. 7 (11th Cir.2005) ("Of trifles the law does not concern itself: *De minimis non curat lex.*"); United States v. Broomfield, 417 F.3d 654, 656 (7th Cir. 2005); Ford v. Wilson, 90 F.3d 245, 248 (7th Cir.1996).

Viewing the plaintiff's version of the facts, an *hour long* detention of the plaintiff is not a brief, momentary seizure. As soon as the plaintiff emptied his pockets, the defendant became aware that the plaintiff did not have possession of any drugs as a result of the monetary exchange. Because the

25

defendant's investigative stop was premised upon his "reasonable suspicion" that a drug transaction had occurred between the plaintiff and the two others with whom he was standing, once the defendant became certain that the plaintiff did not have any drugs, his suspicions concerning the drug transaction were dispelled. Without additional facts to establish a new or renewed reasonable suspicion after the plaintiff emptied his pockets, the defendant has failed to demonstrate that he had a lawful purpose in detaining the plaintiff for nearly one hour.[9] In addition, there are no facts presented by the parties to indicate that the defendant in any way feared for his safety and detained the plaintiff to avoid risk of immediate harm. The law clearly establishes that this factual pattern constitutes an unreasonable seizure in violation of the Fourth

---

[9] The court finds, upon viewing the facts in the light most favorable to the plaintiff, that the plaintiff was seized for the purposes of the Fourth Amendment. A person has been seized, "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554(1980). The controlling test is "whether the officer's words and actions would have conveyed that [the person was not free to leave] to a reasonable person." California v. Hodari D., 499 U.S. 621, 628 (1991); *see also* United States v. Brown, 448 F.3d 239,245 (3d Cir.2006). The following facts demonstrate that a reasonable person in plaintiff's position would not feel free to leave: the defendant's police vehicle blocked the plaintiff's car; the defendant demanded that the plaintiff "empty his pockets;" the defendant called and received the aid of at least two back up officers; and the defendant gained possession of and held onto the plaintiff's identification. As soon as the plaintiff complied with the defendant's demand that he empty his pockets, thus, submitting to the officer's authority, the stop constituted a Fourth Amendment seizure.

Amendment. The law does not, as the defendant argues, establish that these facts constitute a *de minimis* violation. In fact, the defendant has not presented the court with any case that establishes a *de minimis* constitutional injury resulting from an hour long *Terry* stop, never mind resulting from a *Terry* stop where the defendant's suspicion was quickly dispelled and the plaintiff was innocent of wrongdoing. Once again, in support of the his *de minimis* argument, the defendant "cite[s] a bevy of cases outside of this circuit and also analogize[s] malicious prosecutions claims from within this circuit." (Doc. 33, p. 20). None of the cases cited contain analogous facts to the present action, and none of the cases cited clearly establish a *de minimis* violation.

This court finds that the facts taken in the light most favorable to the plaintiff may establish a violation of the Fourth Amendment that is actionable and not *de minimis.* In addition, the length of detention as well as other pertinent facts are disputed by both parties, such that the defendant might be entitled to qualified immunity under his version of the facts. Because these factual disputes are material to the qualified immunity analysis, the Third Circuit requires that summary judgment be denied and the questions of fact go to a jury. *See* Curley v. Klem, 499 F.3d 199, 210 (3d Cir. 2007). Therefore, the defendant's objection on the grounds that the law is unclear as to whether the scope and extent of his actions during the stop of the plaintiff constitute a *de minimis* violation is overruled, and the defendant's motion for summary

judgment on the ground that he is entitled to qualified immunity is denied as it relates to the scope and extent of the *Terry* stop.


### 3. The Plaintiff's Claim Was Not Economically Frivolous

The defendant asserts that while Judge Schwab found that the plaintiff's claims are not substantively frivolous, she "failed to address [the defendant's] argument that Mawson's claim is <u>economically</u> frivolous." (Doc. 93, p. 26) (emphasis in original). The defendant states that the claim is economically frivolous because "a normal person would not spend $400 to file suit" in a case such as this one. (Doc. 93, p. 28).

In cases where litigants proceed *in forma pauperis*, Section 1915(e)(2) of the United States Code requires the court to "dismiss the case at any time if the court determines that . . . the action or appeal . . . is frivolous or malicious." 28 U.S.C. §1915(e)(2). An action is frivolous where "the court determines that the claim is: (1) of little or no weight, value, or importance; (2) not worthy of serious attention; or (3) trivial." Deutsch v. United States, 67 F.3d 1080, 1082 (3d Cir. 1995). For the purposes of a frivolousness determination, a litigant's claim is trivial when,

> the record supports a finding that a reasonable paying litigant would not have filed the same claim after considering the costs of suit. Accordingly, the court must first find the actual amount in controversy under the claim presented and determine whether the amount in controversy is less than the expense of the court costs

and filing fees. If the court so determines, then the claim is a candidate for dismissal as frivolous under §1915(d).

The court must next determine whether the litigant has a meaningful nonmonetary interest at stake under the claim, such that service of the complaint and an allocation of the court's resources for its adjudication is warranted, despite the fact that the claim is economically trivial. If, in addition to finding that the amount of damages in controversy is less than the court costs and filing fees, the court is satisfied that there is no other meaningful interest at stake, then the suit is frivolous within the meaning of §1915(d).

*Deutsch*, 67 F.3d at 1089-90. Moreover, Third Circuit has held: when there is "doubt as to whether the actual amount in controversy is economically trivial, or [ ] doubt as to whether the claim is meaningful, then the plaintiff must be given the benefit of that doubt, for we do not intend that courts use monetary worth as an excuse to brush legitimate grievances aside." *Id.* at 1091.

Here, the defendant simply states that the $400 filing fee is less than the amount in controversy and is an amount that no reasonable person would spend on this lawsuit. However, both the defendant's brief supporting his motion for summary judgment and his objections to the R&R fail to include any evidence to support a finding that the plaintiff has no "meaningful nonmonetary interest at stake." The plaintiff, on the other hand, provides ample support demonstrating that he has a meaningful nonmonetary interest. He states throughout his submissions to the court that his Fourth Amendment Rights were violated and he deserves compensation; and, in his reply to the

defendant's objections, the plaintiff emphasizes the stress and hardship he has undergone as a consequence of the defendant's actions. (Doc. 95, p. 14). The court overrules the defendant's objection and adopts Judge Schwab's conclusion that this action is not frivolous under 28 U.S.C. §1915(e)(2).

### 4.    Plaintiff's Claim Was Not Malicious

Finally, the defendant objects to Judge Schwab's determination that the plaintiff's action is not malicious under 28 U.S.C. §1915(e)(2). The defendant supports this contention by noting that Judge Schwab failed to properly analyze the term "malicious" and failed to review the plaintiff's history of frivolous suits. (Doc. 93, p. 28). Though Judge Schwab did not explicitly define the term and the legal standard, this court agrees with her application of the law and conclusion that the plaintiff's current action is not, per se, malicious.

As mentioned above, the court is compelled to dismiss an action commenced by a litigant *in forma pauperis* "if the court determines that . . . the action or appeal . . . is frivolous or malicious." 28 U.S.C. §1915(e)(2). To determine whether an action is malicious, courts must "engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the

defendant." Deutsch v. United States, 67 F.3d 1080, 1086 (3d Cir. 1995). Several district courts within the Third Circuit further explain that courts must look to whether the litigant has engaged in repetitive litigation and relitigation of claims from prior cases when examining maliciousness. *See, e.g.,* Alford v. Laquise, No. 3:14-CV-13, 2014 WL 3368874 (M.D. Pa. July 9, 2014) *aff'd*, 604 F. App'x 93 (3d Cir. 2015); Pickering-George v. United States Attorney's Office, No. 13-126-SLR, 2013 WL 1897841 (D. Del. May 7, 2013), *aff'd sub nom.* Daley v. United States Attorneys Office, 538 F. App'x 142 (3d Cir. 2013); Trader v. R.S., No. 11-0039 PGS, 2011 WL 1666931, at \*2 (E.D. Pa. May 2, 2011) ("[A] complaint is malicious . . . if it is repetitive or evidences an intent to vex the defendants or abuse the judicial process by relitigating claims decided in prior cases."); Fiorani v. Hewlett Packard Corp., 547 F. App'x 103, 105 (3d Cir. 2013) ("Repetitive litigation undoubtedly is some evidence of a litigant's motivation to vex or harass a defendant where it serves no legitimate purpose.") (unpublished opinion).

In support of a finding of maliciousness, the defendant points to the plaintiff's myriad "unnecessary filings" that "flooded" the docket. (Doc. 93, p. 28). However, maliciousness is determined by the motivation of a litigant at the *time of filing the lawsuit*, not his motivation for filing documents *after commencement* and throughout the lawsuit. *Deutsch*, 67 F.3d at 1086. Therefore, the volume and alleged frivolousness of the plaintiff's filings

throughout the case have little or no weight in determining maliciousness.

In reviewing prior actions commenced by the plaintiff, this court does not find that these actions evidence an intent to vex or harass the defendants or abuse the judicial process in this case. The first three cases cited by the defendant in his objections dealt with issues arising from custody of his children and were not (as the defendant suggests) dismissed due to frivolousness. Mawson v. Court of Common Pleas of Luzerne Cnty., PA, 229 F. App'x 185, 186 (3d Cir. 2007); Mawson v. Lamoreaux, No. 3:12–cv-2413, 2013 WL 451865, at *1 (M.D. Pa. Feb. 6, 2013); Mawson v. Bellino, No. 3:12-cv-2422 (Dec. 5, 2012), *report and recommendation adopted* (M.D. Pa. Feb. 28, 2013). *Mawson v. Court of Common Pleas* was dismissed for failure to state a claim because the defendant was not a legal entity for the purposes of §1983 liability, and *Mawson v. Lamoreaux* was dismissed because the plaintiff failed to establish subject matter jurisdiction.[10] The defendant also cited *Mawson v. Bellino*, wherein the court dismissed the complaint for lack of federal jurisdiction, but specifically noted that the plaintiff may have legal remedies and should refile the complaint in state court. Mawson v. Bellino, No. 3:12-cv-2422 (Dec. 5, 2012), *report and recommendation adopted* (M.D.

---

[10] In *Mawson v. Lamoreaux*, the court specifically dismissed the claim *without* prejudice so that the plaintiff may correct deficiencies and refile the complaint.

Pa. Feb. 28, 2013). The facts arising from these three prior actions are distinct from those at issue in this case, as they relate to child custody matters.

Finally, the last two cases cited by the defendant occurred over fifteen years prior to this case and dealt with completely distinct facts; at the time of these cases, the plaintiff was an inmate at Lackawanna County Prison complaining about unconstitutional prison conditions. Mawson et al. v. Fedorchak et al., No. 1:98-cv-01799 (M.D. Pa. July 2, 1999) (defendants motion for summary judgment granted and case closed); Mawson v. Ross, No. 1:98-cv-1628 (M.D. Pa. Nov. 18, 1998) (dismissed as frivolous, but without prejudice to the filing of a habeas corpus petition against a proper respondent after exhaustion of state court remedies). Of all the cases filed by the plaintiff, the only case that was deemed frivolous was *Mawson v. Ross*, a prisoner complaint from 1998. This, alone, does not indicate a history of frivolous lawsuits that would support maliciousness in filing the instant action.

All five of these prior cases raise facts that are completely distinct from the facts of this case, and thus do not constitute repetitive litigation or relitigation of prior claims. Judge Schwab's conclusion was correct that without any evidence to demonstrate that the plaintiff brought "this claim in an attempt to vex, injure, or harass the defendant," his history of litigation "does not show that Mawson's current claim is malicious." (Doc. 90, p. 14). The defendant's objection that the current claim should be dismissed for

33

maliciousness is overruled.

The court has reviewed Judge Schwab's analysis of the material facts in this case as well as her conclusions. The court agrees, substantially, with the sound reasoning that led Judge Schwab to the conclusions in her report. However, upon reviewing the plaintiff's and the defendant's objections, the court partially departs from Judge Schwab's recommendation and finds that the defendant is entitled to qualified immunity insofar as it relates to the defendant's initial stop of the plaintiff. However, the defendant is not entitled to qualified immunity for his subsequent actions contributing to the scope and duration of the stop.

## IV.    CONCLUSION

For the foregoing reasons, the R&R issued by Judge Schwab, (Doc. 90), is **ADOPTED IN PART and NOT ADOPTED IN PART** as noted above. An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: November 18, 2015**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2013 MEMORANDA\13-1714-02.wpd

34